CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANNA WISNIEWSKI,

              Plaintiff,

        v.

COMMISSIONER OF
SOCIAL SECURITY

              Defendant.

**OPINION**

Civ. No. 2:03-CV-05012 (WHW)

**Walls, District Judge**

    Plaintiff Anna Wisniewski ("Wisniewski" or "plaintiff") appeals the denial of period of disability, disability insurance benefits, and supplemental security income ("SSI"). This Court affirms the administrative law judge's ("ALJ") decision to deny benefits.

## BACKGROUND

**A. Procedural History**

    Plaintiff applied for disability insurance benefits and SSI on February 1, 1996. (Tr. 176.) The claims were denied initially and on reconsideration. At plaintiff's request a hearing was held on June 13, 1997, and a supplemental hearing to hear vocational expert testimony was held on September 12, 1997 before ALJ Stephan. (Tr. 176.) ALJ Stephan affirmed the commissioner of social security's ("Commissioner") decision on October 14, 1997. (Tr. 9-18.) After the appeals council denied plaintiff's request for review, plaintiff filed an action in federal district court. The Honorable Dennis M. Cavanaugh of the United States District Court of the District of New Jersey remanded the case to the Commissioner. On April 8, 2002 the appeals council

vacated the final decision of the Commissioner and remanded the case for further administrative review. (Tr. 176.)   According to the remand order, a hearing was held on June 18, 2002 before ALJ Lissek. Upon reviewing all of the evidence in the record, ALJ Lissek determined Wisniewski was not disabled and denied her benefits. (Tr. 173-187.)  Based on the record ALJ Lisseck determined that plaintiff retained the capacity to perform sedentary or light work, and can only use the right hand as a "helper".   ALJ Lisseck acknowledged plaintiff's impairment, however based on the relevant testimony of medical and vocational experts, he found that plaintiff is still capable of performing other work in the national economy. A request for review was filed with the appeals council and on August 19, 2003 after the appeals council found no grounds for review, this action was timely commenced before the Court. (Tr. 166-167.)

B.     **Medical History**

On or about June 3, 1979 Wisniewski was admitted into the Jersey City Medical Center, after she had fallen on broken glass while crossing the street.   Medical records show that Wisniewski suffered from a deep laceration on the ulnar surface[1] of the right wrist and hand. She was unable to bend the joints of her fingers and had no sensation in the right median and ulnar nerves. Surgery was performed on June 5, 1979 to repair tendons and nerves. (Tr. 156.) Plaintiff was discharged on June 7, 1979 in satisfactory condition and  given pain and antibiotic medication.   She was advised to follow up with Dr. Aluri. (Tr. 156.) On April 17,1996, a consultative examination was performed by Dr. L. Vassallo at the request of the Commissioner. Dr. Vassallo observed that Wisniewski was able to undress herself without any difficulty but did favor her upper right extremity.  Her right wrist was restricted on extension, flexion, radial and ulnar flexion. Both shoulders, both elbows, and the left wrist displayed a full range of motion.

---

[1] Ulnar: relating to the surface of the ulna; the medial and larger bone of the two bones of the forearm. (Stedman's Medical Dictionary 26th Edition.)

**NOT FOR PUBLICATION**  **CLOSED**

(Tr. 178.) Plaintiff was able to make a weak fist with her right hand but was unable to extend the fingers on her right hand. Her grip strength in her right hand was -3/5 while the left hand was 5/5. (Tr. 178.) Dr. Vasallo noticed a one inch round lump which was tender to light touch and mild palpitation, and which caused an electric shock type of pain that radiated up plaintiff's entire right arm. (Tr. 178.) Dr. Vasallo also noted that the plaintiff was desensitized to both touch sensation and pinprick on the ulnar distribution[2] of the ulnar nerve on the right hand. (Tr. 178.) Dr. Vassallo concluded that plaintiff has a permanent disability on the right hand due to the damage of the tendons, ulnar and median nerve. (Tr. 149.) Dr. Vassallo also concluded that plaintiff could not use her right hand for either fine or gross manipulation. Dr. Vassallo noted that plaintiff uses her left hand for most activities and her dexterity in her left hand is "not that good." (Tr. 149.)

In August 2002, at the request of ALJ Lisseck, Dr. Bid performed a second consultative examination. Dr. Bid noted that plaintiff's left upper extremity and both lower extremities had normal range of motion, strength, and sensation. Her right shoulder, elbow, wrist flexion, and extension were normal. Dr. Bid noted that plaintiff was unable to make a fist with her right hand, and that she had "marked, tight, flexion contractures of the flexor tendons of the right hand, second, third, fourth, and fifth fingers, and these fingers could not be extended completely at the PIP and DIP joints, and the range was for -30 degrees, for complete extension on the right side." (Tr. 179.) Plaintiff showed impaired sensation of the median and ulnar nerve of her right hand, but her radial nerve was not damaged. (Tr. 179.) Dr. Bid noted that plaintiff was unable to

---

[2] The area in which the branches of an artery or a nerve terminate in relation to the ulna. (Stedman's Medical Dictionary 26th Edition)

NOT FOR PUBLICATION                                                                      CLOSED

use her right hand for most functional activities, because of "hypersensitivity, weakness, and limited range of motion." (Tr. 179.) On September 24, 2002 Dr. Bid indicated that plaintiff was only able to lift less than ten pounds occasionally and could only occasionally reach, handle, push or pull with her right hand. (Tr. 179.)

At a June 2002 hearing Dr. Nathan Zemel, an impartial medical expert called by the social security administration testified that after he examined plaintiff he concluded that she has significant dysfunction in her right hand and cannot perform fine and gross manipulations with the right hand. (Tr. 180.)  He noted that she does suffer from a sensory impairment and an impairment of the grip on her right hand. Dr. Zemel noted that she can only lift minimal amounts with the right hand, and uses the right hand as a helper for the left hand. (Tr. 180.)  He concluded that plaintiff's left hand is normal as a non-dominant hand, and there is nothing in Dr. Vassallo's report to support his findings that plaintiff's dexterity in her left hand was "not that good." (Tr. 180.)  Dr. Zemel also stated that the sensory deficit to pinprick and touch sensation on the ulnar nerve on the right hand would not prevent the plaintiff from using the right hand as a helper because it does not lack all sensation. (Tr. 180.)  Dr. Zemel also concluded that plaintiff can use the palm of her right hand constantly to help the left hand because there is still some sensation present in the right hand. (Tr. 180.)  In conclusion, Dr. Zemel agreed with the observations of the other physicians, noting that plaintiff is capable of using her left non-dominant hand fully.  Although plaintiff's use of her right hand is limited, it can be used constantly as a helper for the left hand. (Tr. 180.)

Dr. Albert Mylod testified on behalf of plaintiff at the June 2002 hearing.  He testified that plaintiff could not use the fingers on her right hand and has trouble turning her right hand.

4

**NOT FOR PUBLICATION**                                                                                          **CLOSED**

He found that plaintiff has muscle atrophy, which is indicative of nerve damage. Because of this damage she has decreased sensation in her right hand and cannot pick anything up with that hand. (Tr. 181.) Dr. Mylod concluded that plaintiff cannot use her right hand as a helper and cannot lift anything consistently over one pound. (Tr. 181.)

**C.      Employment History**

Plaintiff was born on June 5, 1952 and has an eleventh grade education. (Tr. 177.) After her injury in 1979, plaintiff received therapy for her injury, but could not work for a period of five years, during which she received public assistance. (Tr. 36.) Following her injury, plaintiff worked intermittently as an order picker in a warehouse from 1985 to 1989. Her responsibilities included shipping, receiving, and machine operator duties. (Tr. 131-134.) From 1992 to 1993 plaintiff worked in a book warehouse on an assembly line taking orders and climbing on top of bins to pull books. She claims she had to use both hands to hold books and take orders. (Tr. 49-50.) Plaintiff testified that because of her injury, she was unable to meet the demands of the work and was absent too often and was fired from her order picker and assembly line jobs. (Tr. 35.)

Plaintiff testified that she has been unable to work and complete daily activities because of her problems with her right hand, which is her dominant hand. (Tr. 34-37.) She claims that in recent years she has had increasing problems with her right hand including weakness, numbness, electrical sharp pains radiating from the hand up to her elbow, and difficulty lifting and gripping objects. (Tr. 148.) She is a right hand dominant person but she now relies on her left hand for most activities, but use of this hand is limited. Ms. Wisniewski testified that she lacks medical insurance so she only treats her pain with over the counter medications. (Tr. 37.)

**DISCUSSION**

NOT FOR PUBLICATION                                                                    CLOSED

**A.     Standard of Review**     This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The district court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metro Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). While substantial evidence must have real probative weight, it "may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988)).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales, 225 F.3d at 317. Cursory conclusions unsupported by evidence cannot justify an ALJ's decision. Id. "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (quoting Saldana v.Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa.1976)).

In determining if there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) objective medical facts; (2) diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain; (4) the claimant's educational background, work history and present age." Snee v. Secretary of Health & Human Services, 660 F. Supp 736, 738 (D.N.J. 1987); accord Blalock v.Richardson, 483 F.2d 773, 776 (4th Cir. 1972). In order for this court to properly conduct judicial review and to avoid "judicial usurpation of administrative functions" it must ensure that the "administrative decision...[is] accompanied by a clear and satisfactory explication of the basis on which it rests." Id. Otherwise, remand is appropriate. Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 1981).

**B. Standard for the Commissioner's Determination of Disability**

"Disability" is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Barnhart v. Thomas, 124 S. Ct. 376, 379 (2004); Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

The Commissioner must follow a five step sequential process to determine if an applicant is disabled and eligible for social security disability benefits. 20 C.F.R. § 404.1520. The Commissioner must first ascertain whether or not the claimant is currently engaged in "substantial gainful activity." Plummer, 186 F.3d at 428. "Substantial gainful activity" is defined as "the performance of significant physical or mental duties...for remuneration or profit." Chicager v. Califano, 574 F.2d 161, 163 (3d Cir. 1978). If the claimant is not engaged in

**NOT FOR PUBLICATION** **CLOSED**

"substantial gainful activity" then the ALJ must determine if the claimant is suffering from a severe impairment. Plummer, 186 F.3d at 428. A severe impairment is "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." Thomas, 124 S. Ct. at 379; §§ 404.1520(c); 416.920(c). If the claimant's impairments are severe, the ALJ must further determine if they are listed in Appendix 1 of the Social Security Regulations 20 C.F.R. § 404.1520 or are equivalent to the impairments listed there. Plummer, 186 F.3d at 428; § 404.1520. If the impairments are not listed in or equivalent to those listed in the appendix, then the ALJ must make a finding regarding the claimant's "residual functional capacity to perform" his or her "past relevant work." Id. "Residual functional capacity is defined as what a claimant can still do despite his limitations." Burns, 312 F.3d at 119. Finally, if the ALJ holds that the claimant cannot return to his or her "past relevant work" due to the impairments, then the ALJ must determine if there are "other jobs existing in significant numbers in the national economy which the claimant can perform" taking into account his or her educational and work experiences. Plummer, 186 F.3d at 428.

## ANALYSIS

### A. Substantial Evidence Supports the ALJ's Decision

*1) Substantial Gainful Activity*

The ALJ concluded that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. Plaintiff does not dispute this finding.

*2) Determination of Severe Impairment*

NOT FOR PUBLICATION                                                                          CLOSED

In step two of the sequential analysis, the ALJ found that plaintiff has a "severe" impairment or a combination of impairments based on the requirements in the Regulations 20 C.F.R.§ 404.152(b).  According to the regulations, a medical impairment is severe if it significantly imposes restrictions on plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1520 (c) and 416.920 (c).  Medical evidence shows that plaintiff suffers from a dysfunction of the right hand and an impairment that causes vocational limitations. (Tr. 177.) Plaintiff does not contest this finding.

*3) Listing of Impairments*

When analyzing plaintiff's claim under step three, the ALJ found that plaintiff's medical impairments did not meet the criteria of any of the listed impairments in Appendix 1 of the Regulations. (See 20 C.F.R., Part 404, Subpart P, Appendix 1)("Appendix 1").  Plaintiff's condition did not qualify her for a determination of *per se* disability. See 20 C. F.R., Part 404, Sub. P, App. 1.

Plaintiff asserts that ALJ Lissek failed to properly evaluate her impairments at the third step of the evaluation process because the ALJ did not identify the specific listing he utilized in his findings at step three, in violation of the Third Circuit decision in Burnett v. Commissioner of Social Security Administration, 220 F. 3d 112 (3d Cir 2000). (Def.'s Br. at 14.) In Jones v.Barnhart, the Third Circuit clarified the holding in Burnett, stating:

> "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."

9

**NOT FOR PUBLICATION**                                                                                          **CLOSED**

Jones v. Barnhart, 364 F. 3d 501, 505 (3d Cir. 2004) (citing Burnett v. Commissioner of Social Security Administration, 220 F. 3d at 120.

      The record shows that the ALJ considered the appropriate factors in determining that plaintiff's injury did not meet the requirements of Appendix 1.   The ALJ considered the emergency room medical records, the consultative examination reports of Dr. Vassallo and Dr. Bid, the hearing testimony of vocational expert Rocco J. Meola, the testimony of Dr. Mylod, plaintiff's medical expert, and plaintiff's testimony during the June 18, 1997, September 12, 1997, and June 18, 2002 hearings. (Tr. 176-187.)   In his decision, the ALJ considered all relevant opinions including the medical testimony of Dr. Zemel, a medical expert who testified at the June 18, 2002 hearing that plaintiff does not have an impairment or combination of impairments that meets the requirement of Appendix 1.(Tr. 211.)   The Jones court only requires "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart , 364 F.3d at 505 (citing Burnett v. Commissioner of Social Security Administration, 220 F.3d at 120.)  Plaintiff had only one identified medical impairment, her right hand injury.   The ALJ identified and discussed the evidence pertaining to plaintiff's medical impairment, therefore satisfying the Jones requirements.

*4) Residual Functional Capacity*

      The analysis then proceeds to step four, where the ALJ must determine plaintiff's "residual functional capacity" to perform her "past relevant work." Plummer, 186 F. 3d at 428; 20 C.F.R. § 404.1520(d).   Residual functional capacity is defined as what the claimant "can still

**NOT FOR PUBLICATION** **CLOSED**

do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 (a), 416.945 (a).   If plaintiff is able to meet the demands of her past work, then she is not disabled.

Plaintiff did have past relevant work as an order picker and assembly line worker.   Her duties included shipping, receiving, taking orders and machine operation. (Tr. 131-134.)   During a hearing on September 12, 1997, Rocco J. Meola, an impartial vocational expert, testified that plaintiff's past work as an order picker could be classified as light work in terms of the physical demands. (Tr. 181.)   According to the social security administration, "light" work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567 (b).   In determining plaintiff's residual functional capacity, the ALJ found plaintiff's medical complaints credible to the extent that her symptoms did cause an impairment preventing her from returning to her previous work, but not severe enough to preclude all work activity.   The ALJ found that plaintiff retains residual functional capacity for light and sedentary work, except that she cannot use her dominant right hand for gross or fine manipulation.   Dr. Nathan Zemel testified that plaintiff could only lift minimal amounts with her right hand, and could use her right hand as a helper for the left hand. (Tr.180-186.) Based upon this information the ALJ determined that plaintiff lacked the residual functional capacity to return to her past relevant work. (Tr. 186.)

*5) Determination of Other Existing Jobs in the National Economy*

Once it has been determined that plaintiff is unable to return to her former work, the analysis proceeds to step five where the burden of proof shifts to the Commissioner to demonstrate that plaintiff is capable of performing other work which exists in significant numbers in the national economy. Bowen v. Yuckert, 482 U.S. 137, 146, n.5, 107 S. Ct. 2287,

11

**NOT FOR PUBLICATION**                                                                                                  **CLOSED**

2294, n.5 (1987); Plummer v. Apfel, 186 F. 3d 422, 429 (3d Cir. 1999); Allen v. Brown, 881 F.2d 37, 40 (3d Cir 1989); Santise v. Schweiker, 676 F. 2d 925, 938 (3d Cir. 1982); Dobrowolsky v. Califano, 606 F. 2d 403, 406 (3d Cir. 1979); Rossi v. Califano, 602 F.2d 55, 57-58 (3d Cir 1979). The Commissioner's burden is often me through the testimony of a vocational expert. Before this case was appealead to Judge Cavanaugh, the Commissioner called Dr. Meola as a vocational expert. The ALJ presented a hypothetical to Dr. Meola, which described a right-handed individual with exertional capacity for light and sedentary work who could not do any fine or gross manipulations with the right hand. (Tr. 181-182). The hypothetical did not include any information on the individual's left hand, in spite of Dr. Vassallo's testimony that plaintiff's left hand dexterity was "not that good." It is well-settled that all limitations affecting a claimant must be included within the hypothetical presented to the vocational expert. See Chrupcala v. Heckler, 829 F. 2d 129, 1276 (3d Cir. 1987). In addition, an ALJ many not make speculative inferences from medical reports. See Smith v. Califano, 637 F. 2d 968,972 (3d Cir. 1981). For this reason, Judge Cavanaugh remanded the case to the ALJ holding that "the medical opinion of [Dr. Vassallo] could only be rejected on the basis of contradictory evidence." (Tr. 182). Since there was no medical evidence in the record that contradicted Dr. Vassallo's conclusion, Judge Cavanaugh found that the ALJ should not have assumed that plaintiff's left hand dexterity was normal for a right-hand dominant person, and should have included plaintiff's limited left hand dexterity in the hypothetical.

Upon remand, the ALJ had two options: pose a new hypothetical to a vocational expert, or order additional testimony to discredit or contradict Dr. Vassallo's testimony. The ALJ ordered a second consultative examination of plaintiff by Dr. Bid. Dr. Bid's report found that

**NOT FOR PUBLICATION**                                                                **CLOSED**

plaintiff does not suffer from any injury to her left hand, and that she can use her right hand as a helper. (Tr. 182).   Dr. Zemel, an impartial medical expert, also testified at a hearing on June 18, 2002.   Dr. Zemel testified that there is nothing wrong with plaintiff's left hand.   In response to Dr. Vassallo's finding that plaintiff's dexterity in her left hand is "not that good," Dr. Zemel testified that the only issue would be "the general lack of left hand dexterity" that is typical of a right hand dominant person. (Tr. 180).

Plaintiff testified that she does not have good dexterity in her left hand, however there is nothing in the medical record to indicate that her left hand is impaired, and at previous hearings plaintiff testified that she uses her left hand for some activities. (Tr. 183-84.)   If there is a conflict in the medical evidence presented, the ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." Plummer v. Apfel, 186 F. 3d 422, 329 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058,1066 (3d Cir. 1993).   Plaintiff alleges that the ALJ improperly rejected the medical opinion of Dr. Albert Mylod, a medical expert called as a witness by plaintiff.   Dr. Mylod testified that plaintiff's left hand was normal, but that she could not use her right hand as a helper.   Although, Dr. Mylod agrees that there is nothing wrong with plaintiff's left hand, his testimony regarding her ability to use her right hand as a helper is contradictory to the other medical evidence.   The ALJ decided not to give his opinion as much weight because he was a non-treating and non-examining doctor , with a financial incentive. The Court finds that the testimony of Dr. Bid and Dr. Zemel provided sufficient evidence for the ALJ to conclude that plaintiff's limited dexterity in her left hand was normal for a right hand dominant person and therefore it was not necessary for the ALJ to include this limitation in the hypothetical presented to the vocational expert.

13

**NOT FOR PUBLICATION**                                                                                          **CLOSED**

The conclusion of the ALJ is based on a complete analysis of all the objective medical evidence in the record, medical opinions, and testimony from the hearings. For this reason, the ALJ's decision is affirmed.

CONCLUSION

Based on the evidence in the record, no medical evidence exist that contradicts the ALJ's findings that plaintiff has the residual capacity to perform light and sedentary work, using her right hand as a helper on occasion. (Tr. 184.) The only evidence that would contradict the AlJ's findings is the medical testimony of plaintiff's expert Dr. Albert Mylod, a non-treating and non-examining doctor. (Tr. 182-83.) There is substantial evidence to support the decision of the Commissioner to deny benefits to plaintiff.

For the preceding reasons the ALJ's decision if AFFIRMED.

                                                                                    **s/William H. Walls, U.S.D.J.**